IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>WILLIAM CHRISTOPHER GIBBS | Criminal Action No.<br><br>2:17-CR-005-RWS-JCF |

### The Government's Response in Opposition to Defendant's Motion to Dismiss

The United States of America, by Byung J. Pak, United States Attorney, and Ryan K. Buchanan, Assistant United States Attorney for the Northern District of Georgia, files this Response in Opposition to Defendant's Motion to Dismiss. Defendant has been charged with possessing ricin, a deadly biological agent and toxin, without obtaining the registration required by regulations under Section 351A(c) of the Public Health Service Act, in violation of 18 U.S.C. § 175b(c). (Doc. 1). Defendant has filed a motion to dismiss the indictment and argues that the unregistered possession of ricin is not a federal crime and, therefore, this court lacks jurisdiction. (Doc. 62). Further, Defendant argues that that 18 U.S.C. § 175b is void for vagueness and ambiguous. (*Id.*). As set forth below, however, Congress intended 18 U.S.C. § 175b to criminalize the unregistered possession of ricin, and to conclude otherwise would lead to absurd results. Defendant's motion to dismiss should thus be denied.

### A. Procedural History

On February 22, 2017, a grand jury sitting in the Northern District of Georgia returned a one-count indictment charging Defendant with possession of ricin without lawful registration. (Doc. 1)  After pleading not guilty at arraignment on February 28, 2017 (doc. 5), Defendant filed motions to suppress statements he made to law enforcement and evidence recovered from his vehicle. (Docs. 12-13). Defendant also moved to suppress evidence recovered from a traffic stop that occurred approximately two weeks before his arrest. (Doc. 26).  On August 15, 2017, September 1, 2017, and September 25, 2017, the Court held an evidentiary hearing on Defendant's motions and then denied each of them. (*See* docs. 20, 24, 31, and 46).  Defendant also filed a *Motion in Limine* to exclude testimony from a government expert who will testify at trial that several items recovered from Defendant's car tested positive for the presence of ricin. (Doc. 47).  After hearing the government's expert's testimony that the items retrieved from Defendant's car contained ricin at a *Daubert* hearing, the Court denied Defendant's motion. Defendant now files the instant motion to dismiss.

### B. Legal Argument and Citations to Authority

Defendant has moved under Federal Rule of Criminal Procedure Rule 12(b)(2) to dismiss the indictment on the grounds that it fails to allege an offense or, in the alternative, is unconstitutionally vague or ambiguous. As set forth below, Defendant's motion should be denied because Congress intended to criminalize the unregistered possession of ricin, and to conclude otherwise would lead to absurd results.

1. **Congress has always intended to criminalize the unregistered possession of ricin.**

To begin, 18 U.S.C. § 175b(c) makes it a federal crime to "knowingly posses[] a biological agent or toxin where such agent or toxin is a select agent for which such person has not obtained a registration required by regulations under Section 351A(c) of the Public Health Service Act …." Section 175b(d) defines "select agent" as "a biological agent or toxin to which subsection (a) applies…." In turn, Section 175b(a) criminalizes shipping, transporting, and possession of biological agents and toxins that are listed as a "non-overlap" or "overlap" select biological agents and toxins listed in sections 73.4 and 73.5 of Title 42 of the Code of Federal Regulations. As Defendant points out, the biological agents and toxins listed in 42 C.F.R. § 73.4 do not include ricin. *See* 42 C.F.R. § 73.4. Further, Section 73.5, contrary to the language of 175b(a)(1), only includes exemptions and does not list biological agents and toxins. *See* 18, U.S.C. §175b(a). However, 42 C.F.R. § 73.3 contains a list of biological agents and toxins, which includes ricin, that "have the potential to pose a severe threat to public health and safety." But ricin's omission from the list of biological toxins and agents referenced by § 175b(c) is a clerical error that is belied by legislative and regulatory intent.

That legislative and regulatory intent is illustrated from the beginning, when Congress enacted 18 U.S.C § 175b(a) as part of the USA Patriot Act in 2001. *See* Pub. L. 107-56, 115 Stat. 272, § 817 (2001). The original version of the statute incorporated by reference the then-current Department of Health and Human Service ("HHS") regulations governing the possession and use of select agents and toxins. Specifically, the statute criminalized "restricted persons" from possessing

3

a biological agent or toxin "listed as a select agent in subsection (j) of section 72.6 of Title 42, Code of Federal Regulations, pursuant to section 511(d)(l) of the Antiterrorism and Effective Death Penalty Act of 1996 (Public Law 104–132), and is not exempted under subsection (h) of such section 72.6, or appendix A of part 72 of the Code of Regulations." *See id*.

Congress amended the statute in June 2002 as part of the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 ("the Act") to add, *inter alia*, subsection (c)(1), which criminalized unregistered possession of select agents by any person. *See* Pub. L. 108-177, 115 Stat. 661, § 231 (2002).[1]  In a subsection of the amendment titled "Technical Corrections," Congress removed the previous reference to 42 C.F.R. § 72.6(j) as the source for the list of the prohibited select agents and updated the statute to reference a different section of HHS's regulations.  As amended, the statute prohibited possession of a biological agent or toxin "listed as a select agent in Appendix A of part 72 of Title 42, Code of Federal Regulations, pursuant to Section 351A of the Public Health Service Act, and is not exempted under subsection (h) of section 72.6, or Appendix A of part 72, of title 42, Code of Federal Regulations. *See id*. (emphasis added).  This amendment was necessitated by Sections 201 and 202 of the Act, which added a

---

[1] In addition to the criminal prohibition in 18 U.S.C. § 175b, HHS's regulations prohibit an individual or entity from possessing any HHS select agent or toxin without a certificate of registration issued by the HHS Secretary.  *See* 42 C.F.R. § 73.6.  To obtain a registration certificate, an individual must satisfy various criteria, including a favorable security risk assessment by the Attorney General.  *See id*.

new section to the Public Health Service (351A) requiring HHS to issue regulations that "establish and maintain a list of each biological agent and each toxin that has the potential to pose a severe threat to public health and safety." *Id.* at §§ 201-202.

The second substantive amendment to the statute came in December 2004 as part of the Intelligence Reform and Terrorism Prevention Act of 2004. *See* Pub. L. 108-458, 118 Stat. 3638, § 6802(d) (2002).[2] In a subsection titled "Conforming Amendment to Regulations," Congress struck the prior references to Part 72 and Appendix A of HHS's regulations and inserted new references to Part 73, a new section of HHS's regulations governing select agents and toxins.[3] The amendment changed the statute to prohibit possession of "a non-overlap or overlap select biological agent or toxin in sections 73.4 and 73.5 of Title 42, Code of Federal Regulations, pursuant to section 351A of the Public Health Service Act, and is not

---

[2] Congress also amended the statute in November 2002 to rename the heading as: "§ 175b. Possession by restricted persons." *See* Pub. L. 107-273, 118 Stat. 3638, § 6802(d) (2002).

[3] In December 2002, HHS published an interim final rule in the Federal Register amending its regulations governing the select agents and toxins program and announcing that the new regulations would be "set forth in a new 42 CFR part 73." *See* Possession, Use, and Transfer of Select Agents and Toxins, 67 Fed. Reg. 76886-01 (Dec. 13, 2001). The HHS notice stated that various sections of the new regulations would be phased in over the course of 2003, with the select agents and toxins provisions becoming effective on February 7, 2003. *See id.* at 76892-93. The new regulations first appeared in the 2004 version of the Code of Federal Regulations.

excluded under sections 73.4 and 73.5 or exempted under section 73.6 of Title 42, Code of Federal Regulations." *Id.*[4]

In March 2005, three months after Congress amended the statute, HHS published a final rule amending its regulations regarding the possession, use, and transfer of select agents and toxins. *See* Possession, Use, and Transfer of Select Agents and Toxins, 70 Fed. Reg. 13294-01 (March 18, 2005). As relevant here, the final rule changed the "structure and format of the HHS regulations" found in part 73 and renumbered the sections related to the listing of select agents and toxins incorporated by reference in the statute. *See id.* at 13294.[5] The chart below illustrates the numbering difference between the superseded regulations referenced by the statute and the current regulations presently in effect:

---

[4] Some of the select agents and toxins regulated by HHS under 42 C.F.R. § 73 are also regulated by the Department of Agriculture (USDA) under 9 C.F.R. § 121 and 7 C.F.R. § 331. The select agents and toxins subject to regulation by both agencies are identified as "overlap select agents and toxins" and those substances regulated solely by HHS are identified as "non-overlap agents." The regulatory schemes overlap because some of the same toxins fall within HHS's authority to protect public health and safety as well as USDA's authority to protect animal and plant health.

[5] The rule stated that the renumbering was intended to make HHS' sregulations "more similar" to USDA's corresponding regulations. *See supra* note 5.

| **OLD REGULATIONS** | **CURRENT REGULATIONS** |
|---|---|
| 73.4 HHS select agents and toxins | 73.3 HHS select agents and toxins. |
| 73.5 Overlap select agents and toxins | 73.4 Overlap select agents and toxins. |
| 73.6 Exemptions from requirements under this part | 73.5 Exemptions for HHS select agents and toxins. |
| | 73.6 Exemptions for overlap select agents and toxins. |

HHS was aware of the impact its renumbering scheme would have on 18 U.S.C. § 175b and explained in the final rule how the new regulations should be construed in light of the reorganization. The final rule stated that HHS had "deleted the superseded provisions" previously found in Part 72 governing select agents and "and in their place . . . added language to indicate that for purposes of 18 U.S.C. 175b the list of select agents are set forth in §§ 73.3 and 73.4 and the exemptions are set forth in §§ 73.5 and 73.6." *See id.* at 13316. Accordingly, starting in 2005, 42 C.F.R. § 72.6(h) and Appendix A to Part 72 included language stating that "[f]or purposes of 18 U.S.C. § 175b," the list of prohibited select agents "is forth at 42 CFR 73.3 and 73.4" and the list of "the exemptions [is] set forth at 42 CFR 73.5 and 73.6."

In 2008, however, HHS issued a final rule removing the clarifying language about section 175b from its regulations. Specifically, HHS removed Part 72 in its entirety, concluding that the majority of the section was redundant because it addressed shipment of etiologic agents and the Department of Transportation already had in place a more comprehensive set of regulations applicable to that subject. *See* Interstate Shipment of Etiologic Agents, 73 Fed. Reg. 3874-01 (Jan. 23,

7

2008). HHS also concluded that the remaining portions of Part 72 addressing the select agents program were "no longer needed" because Part 73 contained comprehensive regulations addressing select agents and toxins. *See id*. at 3878. The 2008 HHS rule contained no reference to section 175b or any discussion about the potential impact on section 175b from removing the clarifying language from the regulations.

Since 2008, HHS has updated and republished its regulations governing select agents in accordance with section 351A of the Public Health Service Act, which requires HHS to review and republish the list every two years. *See, e.g.*, Possession, Use, and Transfer of Select Agents and Toxins; Biennial Review, 80 FR 10656-01 (Feb. 28, 2015); Possession, Use, and Transfer of Select Agents and Toxins; Biennial Review of the List of Select Agents and Toxins and Enhanced Biosafety Requirements, 82 FR 6278-01 (Jan. 19, 2017). There have been no changes to the relevant numbering scheme since 2008.

2. **The clerical error does render Defendant's conduct lawful and refusing to recognize Congressional intent would lead to absurd results.**

Generally, courts strictly construe criminal statutes against the government and in the defendant's favor. *See Barrett v. United States*, 423 U.S. 212, 218 (1976); 3 Norman J. Singer, Sutherland Statutory Construction § 59.03 (5th ed. 1992). This is so to ensure that people are fairly warned about what sort of conduct may expose them to criminal penalties and what sort of penalty may be imposed. *See United States v. Bass*, 404 U.S. 336, 348 (1971); 3 Sutherland Statutory Construction § 59.03. But, in strictly construing a statute, courts ought not deprive it of the obvious

meaning intended by Congress, nor abandon common sense. *See United States v. Moore*, 423 U.S. 122, 145, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975); 3 Sutherland Statutory Construction § 59.06.

Many courts have upheld the imposition of criminal penalties despite the presence of a typographical error in the statute.[6] *See United States v. Lacher*, 134 U.S. 624, 625–32 (1890) (upholding conviction for embezzling a letter containing an article of value under 18 U.S.C. § 318 even though after revision of the statute the wording was altered because "the intention to impose a penalty on [the] commission [of the offense] cannot reasonably be denied; and, although the apparent grammatical construction might be otherwise, the true meaning, if clearly ascertained, ought to prevail."); *United States v. Graham*, 169 F.3d 787, 790–91 (3d Cir.1999) (upholding a defendant's sentence for illegally reentering the United States after finding that Congress intended that the actual term of imprisonment imposed determines whether a defendant is classified as an

---

[6] However, some courts have held otherwise. *See United States v. Faygo Beverages, Inc.*, 733 F.2d 1168, 1170 (6th Cir. 1984) (recognizing that Congress unintentionally eliminated a penalty section in recodifying the Interstate Commerce Act, but holding that the defendant was not subject to criminal penalty for his conduct because "it would be unreasonable to require persons confronted with the plain language of a criminal statute to go beyond that statute in order to determine whether Congress really meant what it clearly said"); *United States v. RSR Corp.*, 664 F.2d 1249, 1253–55 (5th Cir. 1982) (noting that Congress inadvertently changed a penalty section in recodifying the Interstate Commerce Act, but holding that the defendant was not subject to criminal penalty for his conduct, stating "although this is what Congress clearly meant to say, intended to say, and wanted to say, still Congress did not say it").

"aggravated felon" under 8 U.S.C. § 1101(a)(43) despite the fact that the statutory section was "obviously missing a crucial verb"); *United States v. Warren*, 149 F.3d 825, 827–28 (8th Cir.1998) (affirming the defendant's sentence of 151 months for manufacturing 32,000 grams of methamphetamine under 21 U.S.C. § 841(b)(1) even though "[a]t the time of [the] offense, because of a typographical error, the same amount of a quantity of a mixture—100 grams—was listed as triggering both the five-year and the ten-year mandatory minimum sentences," because Congress intended drug trafficking penalties to be graduated according to drug quantity); *United States v. Rossetti Bros., Inc.*, 671 F.2d 718, 720 (2d Cir. 1982) ("Plainly, Congress did not intend its recodification [of the Interstate Commerce Act] to reduce the reach of [its] penalty, but intended merely to transplant that section, renumbered, into the recodified portion.... Congressional drafters unfortunately overlooked [this], but, when construed in light of the intent of Congress and in light of common sense, that section clearly applies to the regulations here in question."); *United States v. Scrimgeour*, 636 F.2d 1019, 1021–24 (5th Cir. Unit B 1981) (reversing dismissal of indictment under 18 U.S.C. § 1623(d) for making false declarations before a grand jury because in finding Congress' intention in enacting the statute, the court believed Congress inadvertently used an "or" in the statute but meant to use "and"); *United States v. Moore*, 613 F.2d 1029, 1039–45 (D.C. Cir. 1979) (same); *United States v. Babcock*, 530 F.2d 1051, 1053–54 (D.C. Cir. 1976) (holding that, in light of "an inadvertent change" by Congress when reorganizing and renumbering the statute, 2 U.S.C. § 441(b) was not to be interpreted to mean that a misdemeanor violation under § 440 precluded being sentenced to

10

imprisonment); *cf. Whitfield v. Scully*, 241 F.3d 264, 272 (2d Cir. 2001) ("Although the statute refers to [28 U.S.C.] § 1915(a)(2) for the manner of payment, we have recognized that this reference is a typographical error (as it makes the statute unintelligible) and that the actual process for payment of costs is instead described in § 1915(b)(2)."); *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 953 (7th Cir. 2000) ("The erroneous cross reference in [26 U.S.C. § 7430(c)(4)(D)] to a misnumbered subparagraph in (4)(A) can hardly be construed to have changed the legislative intent ... or to have affected the substantive rights of the parties. The import of the subsection remains clear, in spite of the typo."); *In re Chateaugay Corp.*, 89 F.3d 942, 952 (2d Cir. 1996) (agreeing with other courts that the improperly renumbered subsections in 11 U.S.C. § 507 were the result of typographical errors by Congress rather than substantive changes in the law).

A common sense reading of the statute supports the conclusion that unregistered possession of a biological toxin — including ricin — poses a threat to public health and safety. Although the plain language of 42 C.F.R. § 73.4 does not include ricin, 42 C.F.R. § 73.3 (which lists biological agents and toxins that have the potential to pose a severe threat to public health and safety) does. *See* 42 C.F.R. § 73.3. As noted above, it is clear from the legislative and regulatory history that Congress intended for the unregistered possession of ricin to be a crime. Strictly reading and applying 175b(c) and the statutory cross-references in question, without recognizing this intent, would render an absurd result – the unregistered

11

possession of a biological toxin would be lawful.[7] For this reason, Defendant's motion to dismiss should be denied.

## Conclusion

For these reasons, the government respectfully requests that Defendant's motion to dismiss be denied.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/RYAN K. BUCHANAN
*Assistant United States Attorney*
Georgia Bar No. 623388
Ryan.Buchanan@usdoj.gov

---

[7] Defendant's reading of § 175b(c) would also legalize the unregistered possession of other dangerous biological agents and toxins listed in 42 C.F.R. § 73.3, such as abrin, Bacillus cereus Biovar anthracis, Botulinum neurotoxins, Crimean-Congo hemorrhagic fever virus, Ebola virus, Marburg virus, Monkeypox virus, Reconstructed 1918 influenza virus, SARS coronavirus, South American hemorrhagic fever virus, and Tick-borne encephalitis virus. *See* 42 C.F.R. § 73.3

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

> V. Natasha Perdew Silas
> Mildred G. Dunn

September 14, 2018

> /s/ RYAN K. BUCHANAN
>
> RYAN K. BUCHANAN
>
> *Assistant United States Attorney*